UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DAVEAUN CARSON, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:20-CV-776-JD-MGG |
| OFFICER MCCRAY, | |
| Defendant. | |

REPORT AND RECOMMENDATION

Daveaun Carson, a prisoner without a lawyer, proceeds on an Eighth Amendment against Officer McCray, alleging that Officer McCray used excessive force against him by shooting him with a taser gun on April 5, 20202. ECF 9. On January 19, 2021, the defendants moved for summary judgment, asserting the affirmative defense of failure to exhaust administrative remedies. ECF 23. On July 30, 2021, the court denied the motion, finding a genuine dispute of material fact on the issue of whether Carson had access to a grievance form such that he could have filed a timely grievance. ECF 43. This case was referred to the undersigned magistrate judge for an evidentiary hearing to resolve this factual dispute pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), and the hearing was held on April 26, 2022. ECF 84.

At the summary judgment stage, Officer McCray submitted the grievance policy inmates housed in correctional facilities maintained by the Indiana Department of Corrections. ECF 23-2. According to the policy, inmates must submit grievances no later than ten business days from the date of the incident at issue. *Id.* at 9-10. The grievance

specialist may accept it or reject it after reviewing it for legibility, proper signatures, and other similar considerations. *Id.* If rejected, the grievance specialist provides the inmate a Return of Grievance form, and it is the responsibility of the inmate to make the necessary revisions and to return the revised grievance to the grievance specialist within five business days. *Id.* An inmate may seek an extension of time by submitting the reason for the delay on a separate piece of paper along with the appropriate grievance or grievance appeal form or a request for the appropriate form. *Id.* at 13. Inmates seeking such an extension must show good cause. *Id.* An example of good cause under the grievance policy is an inability to comply for reasons outside of the inmate's control. *Id.* at 10.

Prior to the evidentiary hearing, Carson represented on numerous occasions that he did not have access to grievance forms in restrictive housing, though he filed a grievance on May 19, 2020, and two other grievances thereafter. ECF 35; ECF 41; ECF 59; ECF 64 at 3-9. For example, Carson responded to an interrogatory as follows:

> **Interrogatory No. 9:** Please describe how Plaintiff obtained the grievance form submitted on May 14, 2020, regarding the April 5, 2020, incident, including but not limited to who Plaintiff asked for the grievance form, who provided the grievance form, when Plaintiff received the grievance form, and where Plaintiff received it.
>
> **Answer:** I asked Counselor Hemmerick (sic)[1] I believe was his name and I had asked him once prior around April 15 and he told me he didn't have any one him and I never saw him again for about 2 weeks then I wrote him on a pink request slip and eventually I got one from him when he did rounds with the CO and I told him it was very important and he printed 2 out for me and gave me one.

---

[1] Based on the written evidence admitted at the hearing, the Counselor's name is Timothy Hamrick [DE 76-1, at 11]. In the record, Hamrick's name is misspelled as Hemmerick and Hemridge.

ECF 61 at 8; ECF 62 at 2.

At the hearing, Officer McCray called Carson as a witness, and Carson also testified on his own behalf. He testified that, when he entered restrictive housing in April 2020, he did not know specific details about the grievance process but could have asked a counselor or the grievance specialist if he wanted to review the grievance policy. When he returned from the infirmary after the use of force incident, he asked Sergeant Porter and Sergeant Praither for grievance forms, and they told him to request grievance forms from a counselor or caseworker. Sergeant Porter also told him that he could not use the grievance process to complain about disciplinary matters or staff discipline. Carson had been charged with interfering with staff and so incorrectly understood Sergeant Porter's statement as preventing him from grieving Officer McCray's use of force against him.[2]

According to Carson's testimony, Carson also asked Unit Team Manager Angle for grievance forms, but he responded that he did not regularly work at that location and that his office was in another building. On April 6 or April 7, he submitted a request slip to Counselor Hamrick for a grievance form but received no response. On

---

[2] On this topic, the written procedure states:

> An offender may not grieve the procedure used in disciplinary proceedings or grieve a finding of guilt. However, the offender is not barred from filing a grievance about an event that is merely related to an event that is the subject of disciplinary proceedings. For example, an offender who has been found guilty of battery of staff would not necessarily be barred from filing a grievance that the staff member had treated him or his property improperly in the same course of events.

ECF 23-2 at 10.

3

April 15 or April 16, he received an outdated grievance form from Counselor Hamrick. He submitted a grievance using the outdated form, and, on April 26 or April 27, Shawna Morson responded that he needed to resubmit the grievance on the current form. On April 26 or April 27, he received the correct from Counselor Hamrick, but he did not submit it until May 14, 2020, because his disciplinary proceedings remained pending.

At the hearing, Angela Heishmann testified that, at the relevant times, she served as the grievance supervisor and litigation liaison at the Miami Correctional Facility. In April 2020, the Indiana Department of Correction had implemented a revised grievance process with an updated grievance form. When the grievance office received an outdated form, the practice was to return the grievance with a current form and to allow the inmate five business days to resubmit the grievance. Shawna Morson also testified at the hearing and confirmed Heishmann's account of the procedure for handling inmates' use of outdated forms. She further indicated that she had no specific recollection of her interactions with Carson in 2020.

Officer McCray also presented Jason Nero, who testified that he served as a unit team manager at the relevant times. He personally met with Carson at his cell during weekly rounds on April 9, April 17, and April 27 as documented by his case notes. During these meetings, he would ask whether the inmate had any questions or concerns. He is authorized to provide grievance forms to inmates upon request and frequently does so. If Carson had asked him for a grievance form, he would have

4

provided one. He also would have noted any such requests in his case notes, but the case notes mention no such requests. ECF 76-1 at 2-4.

At the hearing, Carson presented two witnesses. First, Kamian Melton testified that he was another inmate present during the use of force incident. Following the incident, correctional officers denied inmates' request for grievance forms and told them to ask their counselors. Melton could not go to a counselor's officer when he was in restrictive housing, but he wrote to the counselor for a grievance form and received no response. Unit Team Manager Angle would also direct requests for grievance forms to counselors, and it typically took inmates a week to receive a response to a request for grievance forms. Next, Tradale Jones testified that he was Carson's cellmate in restrictive housing. When asked for grievance forms, Officer McCray and Unit Team Manager Angle said no, and he never saw Carson with grievance forms during their time as cellmates.

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the

claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

Inmates are only required to exhaust administrative remedies that are available. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). The availability of a remedy is not a matter of what appears on paper but rather whether the process was actuality available for the prisoner to pursue. *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Thus, when prison staff hinder an inmate's ability to use the administrative process, such as by failing to provide him with the necessary forms, administrative remedies are not considered available. *Id.* In essence, "[p]rison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438 F.3d at 809.

Courts have recognized three ways in which a grievance process may become unavailable. *Ross v. Blake*, 136 S. Ct. 1850 (2016). "First, an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "And finally, the same is true when prison administrators thwart

6

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

To start, the parties do not dispute that the grievance policy was available to Carson on request. Correctional officers and unit team managers directing requests for grievance forms to counselors did not render them unavailable as counselors met with Carson at his cell on a weekly basis to ask if he needed anything and had grievance forms available on request. Further, while Sergeant Porter told Carson that inmates could not grieve disciplinary matters and Carson relied on that information to delay submitting a grievance, Sergeant Porter accurately described the grievance process, so the court cannot find that Sergeant Porter's comments rendered the grievance process unavailable. On this basis, the undersigned finds that the grievance process, including access to grievance forms, was available to Carson during the ten business days that followed the use of force incident.

The undersigned next considers whether Carson sufficiently complied with the grievance procedure in submitting a grievance. At the evidentiary hearing, Carson mentioned for the first time in this case that he had submitted a grievance on an outdated form, which he received from Counselor Hamrick on either April 15 or April 16, but his prior filings raise substantial credibility concerns regarding this testimony. Carson's numerous filings preceding the hearing strongly suggest that the grievance form submitted on May 14 was the first effort to grieve the use of force incident. Indeed, Carson's answer to Interrogatory No. 9 directly undermines his testimony at the hearing, and his prior filings strongly suggest that he did not submit a grievance on any

7

form prior to May 14 because he did not believe he could do so while the disciplinary proceedings remained pending.[3] The undersigned has also considered Carson's remark on the May 14 grievance (ECF 76-1 at 28) that "Counselor Engle (sic) and Hemridge (sic) continues to pass out these same grievance forms," which seems consistent with Carson's testimony that he received an outdated grievance form from Counselor Hamrick but also inconsistent with the testimony from Carson and his witnesses that Unit Team Manager Angle declined to provide inmates with grievance forms.

Moreover, even crediting that Carson's testimony regarding his efforts to submit a grievance on an outdated form, the undersigned cannot find that Carson exhausted his administrative remedies. Carson testified that, on either April 26 or April 27, he received a notice from the grievance specialist stating that he needed to use the correct (new) form and that he received the current grievance form from Counselor Hamrick on one of those dates. Per the grievance policy, which was available to Carson on request, he had five business days to resubmit the grievance, but he failed to do so. Even if the Court were to determine that Carson had ten days to file his grievance on the correct form, Carson waited at least 17 days before actually filing his grievance. On this basis, the undersigned finds that these efforts were insufficient to exhaust administrative remedies.

The undersigned has also considered Carson's testimony regarding his efforts to persuade the grievance office to excuse the untimely nature of his May 14 grievance and

---

[3] According to the disciplinary hearing report, correctional staff dismissed the charges on May 13, 2020. ECF 64 at 22.

regarding the grievance office's refusal to grant the extension of time. While the grievance office could have been more lenient in considering Carson's mistaken understanding as to whether he could have filed a grievance prior to the dismissal of his conduct report, the undersigned cannot find that this denial was inconsistent with the grievance policy or that it otherwise amounted to rendering the grievance process unavailable to Carson.

For these reasons, the undersigned:

(1) FINDS that the Miami Correctional Facility maintained a grievance system that allowed Daveaun Carson to submit a timely grievance regarding the use of force incident on April 5, 2020;

(2) FINDS that Daveaun Carson did not submit a timely grievance regarding the use of force incident on April 5, 2020;

(3) FINDS that staff at the Miami Correctional Facility did not render the grievance process unavailable to Daveaun Carson in April and May 2020, and

(4) RECOMMENDS that this case be dismissed without prejudice because Daveaun Carson did not exhaust administrative remedies before filing this lawsuit as required by 42 U.S.C. § 1997e(a).

> **NOTICE IS HEREBY GIVEN that within fourteen (14) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**

SO ORDERED on this 11th day of May, 2022.

*s/Michael G. Gotsch*
Michael G. Gotsch, Sr.
United States Magistrate Judge